UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA R. G.,<br><br>           Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br><br>           Defendant. | Case No. 19-cv-03426-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 18 |

Plaintiff Julia R. G. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied her application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. [Docket No. 17 ("Pltf. Mot."), 19 ("Reply").] The Commissioner cross-moves to affirm. [Docket No. 18 ("Def. Mot.").] For the reasons stated below, the court denies Plaintiff's motion and grants the Commissioner's cross motion.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits on March 4, 2015, which was initially denied on April 8, 2016 and again on reconsideration on September 9, 2016. Administrative Record ("A.R.") 108-12, 114-18, 176-92. An Administrative Law Judge ("ALJ") held a hearing on January 31, 2018 and issued an unfavorable decision on June 27, 2018. A.R. 13-35, 42-73. The ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar and thoracic spine; chronic mid-thoracic strain; chronic cervical spine strain; and foraminal stenosis of the cervical spine. A.R. 19-22. The ALJ found that Plaintiff retains the following residual functional capacity (RFC):

> [T]o perform light work as defined in 20 CFR 404.1567(b), except climbing ramps and stairs is limited to no more than occasional, and climbing of ladders, ropes, and scaffolds is limited to never; and

>stooping, balancing, crouching, crawling, and kneeling are limited to no more than occasional.

A.R. 23.

Relying on the opinion of a vocational expert ("V.E.") who testified that an individual with such an RFC could perform other jobs existing in the economy, including: Cashier II, Ticket seller, and Folder, the ALJ concluded that Plaintiff is not disabled. A.R. 27-29, 69-70.

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).

## II.   ISSUES FOR REVIEW

Plaintiff argues that the Commissioner's denial of benefits should be reversed because: (1) the ALJ improperly rejected the medical opinion of Plaintiff's psychiatrist, Dr. Balaban; (2) the ALJ improperly rejected Plaintiff's subjective symptom testimony; (3) the ALJ improperly rejected the lay witness testimony of Plaintiff's friend, Jesus Hernandez; (4) the ALJ's Step Five finding was not supported by substantial evidence; and (5) the ALJ was not properly appointed under the Constitution. Pltf. Mot. at 6-17.

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV.   DISCUSSION

### A. The ALJ's Consideration of Medical Opinion Evidence

#### 1.  Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague"

3

reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

The court has read and considered the entire medical record. For the purposes of brevity, the court cites only the facts that are relevant to its decision.

### 2. Analysis

Plaintiff argues that the ALJ erred by failing to provide "specific and legitimate" reasons for giving little weight to the opinion of Plaintiff's treating psychiatrist, Dr. Balaban. Pltf. Mot. at 6-9. The court disagrees.

Dr. Balaban treated Plaintiff for depression and panic attacks from May 2016 to April 2017. A.R. 54-55, 609, 659. In July of 2016, after having treated Plaintiff for approximately two months, Dr. Balaban filled out a "Mental Disorder Questionnaire Form" about Plaintiff. A.R. 605-10. In the section on "Adaptation to Work or Work-like Situations," Dr. Balaban wrote, "She currently is depressed & with panic attacks & cannot currently work." A.R. 608. He also noted in the "Intellectual Functioning/Sensorium" section that Plaintiff has "no cognitive disturbances accept (sic) diminished concentration due to depression & sleep disturbance." A.R. 606. In the "Concentration and Task Completion" section, Dr. Balaban wrote that Plaintiff has "some

impaired concentration." A.R. 608.

The ALJ gave the medical opinion expressed by Dr. Balaban in this questionnaire "little weight." A.R. 22. The primary reason offered by the ALJ for discounting Dr. Balaban's opinion was that it was "inconsistent with his own treatment notes, which reflect the claimant's clear and goal-directed thought process, and do not reflect any significant mental status deficits other than some deficits in mood and affect." A.R. 22 (citations omitted). This reason is both specific and legitimate.[1] *See Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) ("A physician's opinion can be discredited based on contradictions between the opinion and the physician's own notes.").

Plaintiff argues that the ALJ erred because Dr. Balaban's notes are not inconsistent with his opinions. Pltf. Mot. at 8. Plaintiff asserts that Dr. Balaban's notes show mood swings, poor sleep quality, and panic attacks, which are consistent with Dr. Balaban's conclusions of diminished concentration and an inability to work. *Id.* This is true, but so too is the ALJ's observation that Dr. Balaban's treatment notes show clear and goal-directed thought processes and no mental status deficits besides mood and affect. A.R. 22, 576-77, 581, 586, 591. The treatment notes also show focused and alert cognition. A.R. 586, 591. Resolving these conflicting pieces of evidence is squarely the ALJ's province. *Reddick*, 157 F.3d at 722. The fact that Plaintiff disagrees with the ALJ's resolution of this conflicting evidence does not mean that the ALJ failed to give specific and legitimate reasons for discounting Dr. Balaban's testimony.[2]

---

[1] Dr. Balaban's opinion was contradicted by the opinion of Dr. Acenas, who performed a comprehensive psychiatric evaluation of Plaintiff and opined that she did not have any mental work limitations. A.R. 537. Accordingly, the "specific and legitimate" standard applies, not the "clear and convincing" standard, which applies to uncontradicted opinions of treating physicians. *See Lester*, 81 F.3d at 830.

[2] Plaintiff also argues that "[t]he VE's testimony established that an individual off task for 20 percent of the workday, as Dr. Balaban's opinion suggests Plaintiff would be, could not sustain competitive employment." Pltf. Mot. at 8 (citing A.R. 70). However, Dr. Balaban never opined that Plaintiff would be off task for 20 percent of the workday. He merely opined that Plaintiff had "some impaired concentration." A.R. 608. In any event, as the ALJ noted, Dr. Balaban's conclusion about "some impaired concentration" was in conflict with his treating notes showing clear and goal-directed thought processes and no mental status deficits besides mood and affect. A.R. 22.

### B. The ALJ's Consideration of Plaintiff's Subjective Symptom Testimony

#### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id*. (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is

malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2. Analysis

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but then discounted Plaintiff's subjective testimony because he found that her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. A.R. 23. The ALJ did not identify any affirmative evidence of malingering. *See* A.R. 23. Accordingly, the ALJ was required to provide "specific, clear and convincing" reasons for discounting Plaintiff's testimony. *Vasquez*, 572 F.3d at 591. Plaintiff argues that the ALJ failed to meet this standard and instead improperly cited the objective medical evidence, generally, as contradicting Plaintiff's testimony, without specifying what portions of the medical evidence contradict what portions of Plaintiff's testimony. Pltf. Mot. at 10. This is not true.

The ALJ began by describing Plaintiff's testimony regarding her limitations, including her testimony that she has to take breaks while walking up stairs, needs help from her daughter to do chores, and can only walk for approximately 25 minutes before needing a 10 to 15 minute break. A.R. 23. The ALJ then provided four reasons for discounting this testimony and concluding that Plaintiff is capable of performing light work with postural modifications: (1) Plaintiff's treatment records and physical examinations show that her condition is responsive to treatment; (2) work status references throughout the record indicate that Plaintiff is capable of light work; (3) Plaintiff's own reported abilities and daily activities, including returning to perform a light duty job for about six months, show she is capable of performing light work; and (4) the state reviewing physicians, Dr. Garcia and Dr. Berry, and the qualified medical examiner, Dr. Mehta, all opined that she is capable of performing light work. A.R. 24-27. The ALJ supported all of these reasons with specific citations to the record.

*First*, in finding that Plaintiff's condition was responsive to treatment, the ALJ cited to physical examinations in 2016 and 2017 that showed full strength in Plaintiff's extremities and a normal gate. A.R. 24, 566, 612, 618, 621, 624, 627, 630, 645, 648. The ALJ also cited Plaintiff's statements to doctors in 2017 that she was feeling "well" and that she had just started a new job. A.R. 24, 713, 716. The ALJ also provided citations to medical records showing that Plaintiff's treatment consisted mainly of medications and some injections and that she was encouraged to stay active and engage in a home exercise program. A.R. 24, 566, 612-13, 618-19, 621-22, 624-25, 627-28, 630-31, 646, 649. Taken together, these citations support the ALJ's conclusion that Plaintiff's condition is responsive to treatment and not as limiting as she testified. *See Tommasetti*, 533 F.3d at 1040 (finding that plaintiff's positive response to conservative treatment undermined his subjective reports of disabling pain).

*Second*, the ALJ cited to numerous places in the record where Plaintiff's treating doctors opined on Plaintiff's work limitations in connection with her worker's compensation claims and found that she was capable of working with some exertional and postural limitations. A.R. 24-26, 540, 613, 616, 619, 622, 625, 628, 631, 643, 646, 734. These citations support the ALJ's conclusion that Plaintiff's limitations are not as severe as she testified and that she is able to perform light work with postural limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) ("Dr. Eather's report and Dr. Neville's report—which both found Stubbs–Danielson could perform a limited range of work—support the ALJ's credibility determination.").

*Third*, the ALJ cited to specific evidence of Plaintiff's activities that he found contradicted her testimony of disabling pain. A.R. 23-24, 27. The ALJ cited Plaintiff's testimony that she worked for approximately six months at a light-duty job in 2017. A.R. 23-24, 49-53. He also cited her statements to Dr. Acenas, the psychiatric consultative examiner, that she could do household chores, such as cooking, cleaning and doing laundry. A.R. 27, 536. The ALJ found that these statements contradicted Plaintiff's hearing testimony that she could not work and needed her daughter's help to do household chores. A.R. 24, 27, 56-57. This was a proper conclusion. *See Smolen*, 80 F.3d at 1284 (the ALJ can consider daily activities and inconsistencies in testimony in making a credibility determination).

8

*Fourth*, the ALJ cited the conclusions of the state agency reviewing doctors and Dr. Mehta, the doctor who evaluated Plaintiff for her worker's compensation claim, which all found Plaintiff capable of working with some exertional and postural limitations. A.R. 25, 83-84, 98-99, 424, 459, 556. These medical opinions provide further support for the ALJ's conclusion that Plaintiff's subjective testimony was not fully credible. *See Stubbs-Danielson*, 539 F.3d at 1175.

The court finds that these four reasons given by the ALJ meet the standard of "specific, clear and convincing" reasons for discounting Plaintiff's testimony. These specific, clear, and convincing reasons, supported by specific citations, distinguish this case from the "single, conclusory statement" at issue in *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015), on which Plaintiff relies. Pltf. Mot. at 10. Accordingly, the court finds that the ALJ did not err in discounting Plaintiff's subjective testimony.

### C. The ALJ's Consideration of Lay Witness Testimony

#### 1. Legal Standard

Testimony provided by a lay witness as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence to be taken into consideration by an ALJ unless he or she expressly discounts such evidence and provides "reasons germane to each witness" for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), *superseded on other grounds by regulation*. An ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

#### 2. Analysis

Plaintiff argues that the ALJ erred when he gave "some weight" to a third party function report completed by Plaintiff's friend, Jesus Hernandez, but only to the extent it was "not inconsistent with the balance of the evidence." Pltf. Mot. at 12 (quoting A.R. 26). In addressing Mr. Hernandez's statements, the ALJ noted that they "largely mirror those of the claimant" and that Mr. Hernandez "is not medically trained to make exacting observations regarding frequencies, types, and degrees of medical signs and symptoms." A.R. 26. In light of the ALJ's detailed

9

discussion of reasons for discounting Plaintiff's testimony, A.R. 23-27, and the similarities between Mr. Hernandez's testimony and Plaintiff's testimony, A.R. 308-16, 317-24, the ALJ's statements about Mr. Hernandez's testimony satisfied his duty to provide "germane" reasons to discount Mr. Hernandez's testimony. *See Molina*, 674 F.3d at 1114.

### D. The ALJ's Step Five Determination

Plaintiff argues that the ALJ erred in his Step Five determination because the hypothetical he provided to the V.E. did not contain "the limitations assessed by the treating doctor, Dr. Balaban, [Plaintiff's] credible allegations, the limitations described by the lay witness, and the limitations related to [Plaintiff's] severe impairments of depression and cervical radiculopathy." Pltf. Mot. at 13. With regard to limitations described by Dr. Balaban, Plaintiff, and Mr. Hernandez, this argument is duplicative of Plaintiff's other arguments, which have already been rejected. With regard to the argument that the hypothetical failed to incorporate limitations related to Plaintiff's depression and cervical radiculopathy, the ALJ did not find those impairments to be severe, A.R. 19-22, and Plaintiff does not challenge that finding, apart from his challenge to the weight given to Dr. Balaban's opinion. Nor does Plaintiff explain what limitations are caused by these impairments. *See* Pltf. Mot. at 13. The court therefore rejects these arguments and finds that the ALJ's Step Five finding was supported by substantial evidence.

### E. The Constitutionality of the ALJ's Appointment

Plaintiff argues that the ALJ who conducted her hearing was not properly appointed under the Constitution's Appointments Clause at the time of the hearing. Pltf. Mot. at 13-17. While the Commissioner does not dispute this claim substantively, he argues that Plaintiff has forfeited this argument by failing to raise it at any time during the administrative process. Def. Mot. at 11-18. The court agrees that Plaintiff has forfeited the argument.

Appointments Clause challenges are nonjurisdictional and can be forfeited. *See Freytag v. Comm'r.*, 501 U.S. 868, 878 (1991) (exercising discretion to consider an Appointments Clause challenge, even though not raised below, because it was a "rare" case). Under binding Ninth Circuit precedent, a Social Security claimant who fails to raise an issue before the ALJ forfeits that argument and cannot raise it for the first time in district court. *Meanel v. Apfel*, 172 F.3d 1111,

1115 (9th Cir. 1999) ("[Social Security claimants] must raise issues at their administrative hearings in order to preserve them on appeal." (citation omitted)); *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (holding that *Meanel* was still good law after the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103 (2000)). Numerous district courts in the Ninth Circuit, including courts in this district, have applied this rule in similar circumstances and found a Social Security claimant's Appointments Clause claim forfeited when it was not raised to the ALJ. *See, e.g., Zoran S. v. Berryhill*, No. 18-cv-07672-JSC, 2020 WL 7405737, at *6-7 (N.D. Cal. Dec. 17, 2020); *Baglio v. Saul*, No. 18-cv-04294-HSG, 2020 WL 2733919, at *12 (N.D. Cal. May 26, 2020); *James A. v. Saul*, No. 19-cv-00104-TSH, 2019 WL 4600940, at *14-15 (N.D. Cal. Sept. 23, 2019). Plaintiff does not address this binding Ninth Circuit precedent, and instead cites to SSA formal rulings, Supreme Court precedent that is not directly on-point, and policy arguments. *See* Pltf. Mot. at 14-17. None of the arguments invoked by Plaintiff can overcome the binding Ninth Circuit precedent that issues not raised before the ALJ are forfeited and cannot be raised for the first time in district court. In accordance with this precedent, the court finds Plaintiff has forfeited her Appointments Clause challenge.

## V. CONCLUSION

For the foregoing reasons, the court denies Plaintiff's motion and grants the Commissioner's cross motion.

**IT IS SO ORDERED.**

Dated: March 12, 2021



Donna M. Ryu
United States Magistrate Judge